STATE OF NEW JERSEY, PLAINTIFF, v. P. SALDUTTI AND SON, DEFENDANT.

Middlesex County Court

Decided September 22, 1961.

*Mr. David D. Furman,* Attorney General of New Jersey (*Mr. Maurice R. Strickland,* appearing), attorney for plaintiff.

*Mr. Ernest Brita,* attorney for defendant.

MOLINEUX, J. C. C. This is an appeal from the Municipal Court of the Township of Woodbridge wherein the defendant, P. Saldutti and Son, was found guilty of violating *N. J. S. A.* 39:3–84. The statute provides for certain weight limitations as to trucks and trailers operating on public roads within the State of New Jersey, such limitation depending on the nature of the vehicle in question. The vehicle owned by the defendant in this case, when weighed at a state-operated scale, was found to weigh 82,000 pounds although the statutory limitation for the vehicle in question is 60,000 pounds. Thus there was an overweight of 22,000 pounds. The defendant admits the accuracy of these findings.

The defense offered by defendant is in effect two-fold:

1. That under the provisions of *N. J. S. A.* 39:3–84.3, there can be no conviction where the weight is determined through the use of scales other than public scales. The section of the statute invoked is as follows:

"Any State Police officer or motor vehicle inspector having reason to believe that the size or weight of a vehicle and load is unlawful is authorized to require the driver to stop and submit to a measurement or weighing of the same by means of either portable or stationary scales and may require that such vehicle be driven to the nearest public scales in the event such scales are within 2 miles."

2. That there was in fact no violation in the instant case because of the exception contained in *N. J. S. A.* 39:3–84.3, reading as follows:

"No vehicle shall be deemed to be in violation of the overweight provisions of this act when, upon examination by an officer or inspector, the vehicle's dispatch papers show it is proceeding from its last preceding freight pick-up point within the State of New Jersey by a reasonably expeditious route to the nearest available scales or to the first available scales in the general direction towards which the vehicle has been dispatched, or is returning from such scales after weighing-in to the last preceding pick-up point."

It should be noted that the defendant has not claimed that in fact the scales used in the instant case were in any wise inaccurate. The essence of its claim is that the scales to be used under this statute must be public scales, no matter how accurate other scales may be. The factual situation disclosed by stipulation of the parties, entered into orally at the time of the trial, and the evidence submitted show that the defendant's vehicle was loaded at the plant of the Hayden Chemical Company located in the lowlands south of the spur of the Lehigh Valley Railroad, which spur runs from South Plainfield to Perth Amboy. The truck then proceeded from the plant into the community known as Fords, crossing the road between Metuchen and Perth Amboy variously known as New Brunswick Avenue and Amboy Avenue, and proceeded in a generally northeasterly direction along St. George's Avenue until the latter's intersection with Route 9. The truck then proceeded north on Route 9 to Gate No. 11 of the New Jersey Turnpike, and was there accosted by the arresting officers. The destination of the truck was a pier in Hoboken, which was to be reached by continuing through the cities of Elizabeth and Newark and thence on to Hoboken.

Upon being stopped by the arresting officers, the truck was taken with its driver north on Route 9 to the Woodbridge Circle on Route 1, and thence southwesterly a short

distance to a weighing station maintained by the State of New Jersey where the overweight was confirmed. This station is not open to the use of the general public.

The driver for the defendant company testified that he discovered that his truck "felt heavy" when put into high gear, which suggested to him that either the truck was overloaded or the brakes were dragging. He testified that he was satisfied that the brakes were in proper order and suspected overloading. Parenthetically, it should be said that no one connected with the defendant appears to have been responsible in any way for the loading. The driver said that his truck was equipped with a radio device by which he could communicate with his home office in Newark, that he did so, and that he was instructed to proceed to a public weighing station located in the City of Elizabeth, approximately one mile from the Turnpike. It was subsequent to the receipt of these instructions that the driver was arrested.

It was agreed that the nearest weighing station open to the general public is located at the Carolina Truck Terminal, which truck terminal is located on Route 1 at or near its intersection with Old Post Road, which spot is considerably to the west of the property of the Hayden Chemical Company. The court finds that the latter station cannot be considered as an available scale "in the general direction towards which the vehicle has been dispatched."

The driver testified that the only dispatch paper he had was an informal paper showing the points of origin and of destination. The paper contained no reference to any scales, public or otherwise, to which the driver was directed.

The essence of defendant's first claim is that conviction under the statute can result only if the weight determination is reached at a "public" scale. Necessarily this raises the question as to whether the scales here used were "public" within the meaning of the quoted statute.

Were the scales here used "public" scales? There is no definition in the statute as to the meaning of the word

"public," and in *State v. Metropolitan Iron & Steel Co.,*
62 *N. J. Super.* 412 (*Cty. Ct.* 1960), public scales were
held to be scales maintained for hire. This conclusion is
reached by reference to *R. S.* 51:1–73, which sets up the
office of "public" weighmaster as being one who for hire
weighs a commodity and issues "weight" certificates "upon
which the purchase or sale of such commodity is based."

There is no need to limit the use of the word "public" as
set forth in *N. J. S. A.* 39:3–84.3 to a scale used for hire.
The two statutes are not *in pari materia,* and the word
"public" may be interpreted differently as used in the two
statutes.

In the instant case, the measurement was upon scales
maintained by the State of New Jersey for such purpose
and equally entitled to a presumption of correctness as any
privately owned scales available for hire under the direction
of a publicly appointed weighmaster.

It should be noted in *State v. Metropolitan Iron &
Steel, supra,* the weighing took place at a privately owned
scale, and the question before the court was whether such
privately owned scale was nevertheless "public" within the
meaning of the statute because it was owned and operated
by a public weighmaster. While the language of the opinion
is to the effect that "public," as set forth in the statute,
means scales for hire, there was no occasion for the court
to hold, nor did it hold, that a scale maintained by the State
of New Jersey and not for hire was nevertheless not a
public scale within the meaning of the statute. It is the
opinion of the court that the word "public" as set forth
in the statute includes a state-owned scale as well as a scale
available for hire.

Defendant further claims it is entitled to an acquittal
by reason of the third paragraph of *N. J. S. A.* 39:3–84.3,
quoted above. Initially, it should be noted that this para-
graph clearly indicates a legislative intent that there shall
be no violation if the requirements of the paragraph are met.

 The paragraph in question sets up an exception to the originally described infraction. Thus it is a matter of defense, and the defendant must prove that it comes within its terms. *Town of West Orange v. Jordan Corp.*, 52 *N. J. Super.* 533 (*Cty. Ct.* 1958). A careful reading of the exception shows that to come within its terms, the driver must show to the arresting officer the vehicle's dispatch papers and that such dispatch papers must show that said vehicle is going to or from the first available scale in the general direction towards which the vehicle has been dispatched. There was no testimony to show any dispatch papers which indicated that the vehicle was going towards any available scale. The only dispatch paper, if it be such, was an informal memorandum showing where the load was to be picked up and where it was to be delivered. There is no reference in the memorandum to a weighing station.

Defendant sought to avoid this requirement by testimony to the effect that when there arose in the driver's mind a doubt as to the propriety of the weight load, he radioed to the defendant's home office for instructions and that he was then instructed to go to the public scales located in Elizabeth. Defendant argues that the requirements of the statute are unrealistic in the light of present-day procedures of the trucking industry, and suggests that messages by radio are used in lieu of dispatch papers. However true this may be as a matter of fact, it still does not constitute compliance with the statute. The statute contemplates a paper which can be exhibited to the arresting officer. It is the opinion of the court, therefore, that the defendant failed to prove that it came within the provisions of the aforesaid exception.

The defendant is found guilty of violation of the statute and is fined $663 and costs.